# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Rink Construction, Inc., | Civil No. 1:19-cv-00036-DLH-CRH |
| Plaintiff, | |
| v. | |
| Mid-Continent Casualty Co., | |
| Defendant. | |

## RINK CONSTRUCTION, INC.'S OPPOSITION TO MOTION TO DISMISS

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 2

ARGUMENT IN OPPOSITION TO MOTION TO DISMISS. ................................. 7

I.      This Court has subject matter jurisdiction over Rink's declaratory
        judgment, bad faith, and breach of contract claims against
        Mid-Continent..................................................................................... 7

        A. Mid-Continent's motion to dismiss presents a facial—not factual—
           attack on subject-matter jurisdiction............................................. 7

        B. Rink's well-pleaded declaratory judgment claim presents an actual,
           substantial controversy between Rink and Mid-Continent that warrants
           adjudication. ................................................................................ 9

        C. This Court has subject matter jurisdiction over Rink's well-pleaded bad
           faith claim against Mid-Continent................................................ 13

        D. This Court has subject matter jurisdiction over Rink's well-pleaded
           breach of contract claim against Mid-Continent ........................... 17

CONCLUSION.............................................................................................. 20

## INTRODUCTION

Mid-Continent Casualty Co.'s motion to dismiss Rink Construction, Inc.'s declaratory judgment, bad faith, and breach of contract action based on an alleged absence of subject matter jurisdiction is indicative of Mid-Continent's prolonged effort to delay adjudication and resolution of the real and substantial disputes between Rink and Mid-Continent.

As detailed in Rink's Complaint, Mid-Continent's conduct with regard to Rink has fallen far short of both its contractual duties and its implied by law obligation of good faith and fair dealing toward its insured. Rink has pleaded compelling and plausible claims against Mid-Continent in this lawsuit that should be subjected to meaningful discovery and resolution. Any further delay of adjudication of these legal issues would be wasteful and unduly prejudicial to Rink given the current state of the record and the related lawsuits. The *Lodholtz* lawsuit[1] has been resolved and this Court entered a partial summary judgment against Rink regarding indemnification in a separate *Continental/Rink* lawsuit.[2] Because there is no genuine or persuasive legal or factual basis to dismiss or stay

---

[1] *Lodholtz v. Cont'l. Res., Inc.,* No. 15–116-RRE-ARS (D. N.D.) (the "*Lodholtz* lawsuit").

[2] *Cont'l Res. Inc. v. Rink Constr., Inc.,* No. 16-91-DLH-CRH (D. N.D.) (the "*Continental/Rink* lawsuit").

this action, Mid-Continent's motion to dismiss under Rules 12(b)(1) and (6) should be denied in its entirety.

## FACTUAL BACKGROUND[3]

This is a declaratory judgment, breach of contract, and bad faith action brought by Rink against its insurer Mid-Continent for failing to honor its contractual and implied-by-law obligations arising under commercial general liability coverage that Rink purchased from Mid-Continent. *See* Compl. (Dkt. #1-2).

The underlying dispute arises out of a December 2013 accident at a North Dakota oil and gas well site that caused severe bodily injuries to Brad Lodholtz—an employee of Rink. Compl., ¶ 23. Lodholtz was injured while performing services for Continental at an oil and gas well site known as the Bombach 4-35H well. *Id.*

Since 2008, Rink had been performing work for Continental in connection with Continental's North Dakota oil well sites pursuant to a Master Service Contract (MSC) between the parties. Compl., ¶ 8 & Ex. A (the MSC). The MSC

---

[3] As discussed below (at 8) regarding the standard of review, all of the factual allegations in the Complaint are presumed to be true for purposes of this motion to dismiss and the Court should construe the pleadings in the light most favorable to the non-moving party, Rink. *See Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir. 1993).

contains indemnification obligations from Rink to Continental and required Rink to procure and maintain certain insurance in favor of Continental. *See* Compl., ¶¶ 9-11.

Rink complied with the MSC by purchasing a primary policy and an umbrella policy from Mid-Continent which cumulatively provide $5 million in coverage. *See* Compl., ¶¶ 1-2, Ex. B (the "Policy") & Ex. C (the "Umbrella Policy"). Rink paid Mid-Continent premiums of nearly $170,000 for the Policy and Umbrella Policy. Compl., ¶¶ 15, 22.

The Policy provided coverage for, among other things, damages because of bodily injury by accident and extended coverage to additional insureds related to Rink's business, including Continental. Compl., ¶¶ 14-19. For example, the Policy's "Additional Insured" Endorsement provides that an insured includes: "Any person or organization for whom the named insured has agreed by written 'insured contract' to designate as an additional insured subject to all provisions and limitations of this policy." *Id.*, ¶ 17. And, another Policy Endorsement defines an "insured contract" as including, among other things: "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization[.]" *Id.*, ¶ 18.

In July 2015, Lodholtz and his wife commenced a lawsuit against Continental related to the injuries and damages they suffered in connection with the Bombach 4-35H well accident. *See* Compl., ¶ 24. In the *Lodholtz* lawsuit, Lodholtz and his wife alleged that their damages arose out of Continental's negligence. *Id.*

Shortly thereafter, in August 2015, Continental tendered defense and indemnity to Rink and made a claim under Rink's policies with Mid-Continent based on the MSC between Continental and Rink. Compl., ¶ 25. In response to Continental's demand for defense and indemnify, Rink tendered the claim to Mid-Continent and demanded for it to honor its indemnification obligations under the Policies with regard to the *Lodholtz* lawsuit. *Id.*

In response, on October 7, 2015, Mid-Continent advised Rink that it had "initiated an investigation into the circumstances of the above referenced claim and coverage analysis in an effort to determine the application of the coverage available to Continental Resources (Continental) under the terms of [the Policy] to this claim" and claimed to assert a reservation of rights while it investigated coverage. Compl., ¶ 26.

Continental then sued Rink, seeking a declaration as to indemnity under the MSC. *See Continental/Rink* lawsuit.

In July 2017, a jury found Continental negligent at the conclusion of trial in the *Lodholtz* lawsuit and entered an $8,496,000 verdict against Continental. Compl., ¶ 27. After the jury verdict was adjusted for comparative fault, the Clerk of Court entered an amended judgment of $6,159,600 against Continental. *Id.*

In August 2017, Continental sent a letter to Rink and demanded that Rink indemnify Continental for the entire $6,159,600 verdict under the MSC. Compl., ¶ 28. In response to the above-policy-limit demand being made against its insured, Rink, Mid-Continent failed to act to protect Rink and disregarded its duty to act fairly and in good faith in dealing with Rink. *Id.*, ¶¶ 29-31.

In an October 24, 2018 Order in the *Continental/Rink* lawsuit, this Court granted partial summary judgment to Continental, concluding that "Rink is obligated to defend, indemnify, and save harmless Continental from all claims, demands, judgments, and settlements related to the MSC and arising out of the Lodholtz lawsuit." *Cont'l Res. Inc. v. Rink Constr., Inc.*, 352 F. Supp. 3d 928, 938 (D. N.D. 2018).

Throughout the past almost four years since Rink and Continental made demands to Mid-Continent under the Policies relating to the Lodholtz injuries/damages, Mid-Continent has acted unreasonably and in furtherance of its own interests in prolonging and delaying resolution of the coverage issues under the Policies, including by: unilaterally rejecting multiple offers made by

the Lodholtzes and refusing to settle the *Lodholtz* lawsuit in a timely manner; failing to consider and act in Rink's interests; failing to recognize the improper conflicts of interests inherent in Mid-Continent's actions and inaction; and refusing to make full disclosure to Rink of all facts and evidence regarding the lawsuit/Policies and all settlement-related discussions, issues, and coverage positions that Mid-Continent has asserted with regard to Policies and all Lodholtz-related claims/demands and lawsuits. *See, e.g.,* Compl., ¶¶ 29-42. In the almost four years since the Lodholtz-related claims/demands were first made, Mid-Continent has never provided Rink with any decision on any of the indemnification and coverage issues under the Policies for the Lodholtz-related claims/demands. *Id.,* ¶ 34.

In November 2018, Continental sent a letter to Rink demanded that "that Rink immediately take action to settle the Lodholtz lawsuit." Compl., ¶ 38. Continental further stated that Mid-Continent has "unreasonably been unwilling to" settle the *Lodholtz* lawsuit and that "[t]he bottom line is that Continental does not care whether Rink or Mid-Continent pays or settles the Judgment, but one of them must and the time to do so is now." *Id.*

Also in November 2018, Rink sent a letter to Mid-Continent regarding its bad faith conduct and demanded full disclosure of all facts and communications relating to the Policies, Mid-Continent's communications, coverage positions,

and settlement discussions and offers, as required by Mid-Continent's

contractual and implied by law obligations of full disclosure, fair dealing, and

good faith toward Rink. Compl., ¶ 39. In response, Mid-Continent refused

provide *any* of the requested information to Rink. *Id.*, ¶40.

Due to Mid-Continent's failure to act in good faith in its dealings with

Rink and failure to promptly and fully acknowledge and satisfy its

indemnification obligations under the Policies, Rink initiated this lawsuit against

Mid-Continent.

## ARGUMENT IN OPPOSITION TO MOTION TO DISMISS

**I.     This Court has subject matter jurisdiction over Rink's declaratory judgment, bad faith, and breach of contract claims against Mid-Continent.**

### A.     Mid-Continent's motion to dismiss presents a facial—not factual—attack on subject-matter jurisdiction.

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to seek

dismissal for lack of subject matter jurisdiction. "A court deciding a motion

under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual

attack.'" *Osborn v. U.S.*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). "In a facial challenge

to jurisdiction, all of the factual allegations concerning jurisdiction are presumed

to be true and the motion is successful if the plaintiff fails to allege an element

necessary for subject matter jurisdiction." *Titus,* 4 F.3d at 593.[4] Also, a district court may take judicial notice of public records in ruling on a Rule 12(b)(1) and (b)(6) motion to dismiss. *Stahl v. U.S. Dep't of Agric.,* 327 F.3d 697, 700 (8th Cir. 2003).

Here, because Mid-Continent's motion is not supported by any extrinsic evidence (i.e., affidavits/declarations or testimony), the Rule 12(b)(6) standard applies to this Court's disposition of Mid-Continent's Rule 12(b)(1) motion. Accordingly, in ruling on Mid-Continent's facial challenge to jurisdiction, "all of the factual allegations concerning jurisdiction are presumed to be true" and this Court must construe the pleadings in the light most favorable to the non-moving party—Rink. *Titus,* 4 F.3d at 593.

Because each of Rink's three claims against Mid-Continent—for declaratory judgment, bad faith, and breach of contract—state well-pleaded, plausible claims for relief that survive Mid-Continent's subject matter jurisdiction challenge, Mid-Continent's motion to dismiss under Rules 12(b)(1) and (b)(6) should be denied in its entirety.

---

[4] The Eighth Circuit further recognized that if a defendant "wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Titus,* 4 F.3d at 593 (italics in original).

**B.    Rink's well-pleaded declaratory judgment claim presents an actual, substantial controversy between Rink and Mid-Continent that warrants adjudication.**

With regard to Rink's declaratory judgment claim (Compl., ¶¶ 50-52), Mid-Continent's contention (at 7) that this claim should be dismissed because it is allegedly "improper" is easily rejected. The only "improper" aspect of the record before this Court is Mid-Continent's continued effort to delay and prolong resolution of the disputed issues between Rink and Mid-Continent, as clearly evidenced by its failure to come to any decision regarding coverage during the nearly four years that it has been on notice of the Lodholtz-related claims/demands and legal issues.

Rink seeks a declaration regarding Rink and Mid-Continent's respective rights and indemnification obligations in connection with *Lodholtz* lawsuit, Continental's demands to Rink, and the demands/claims made under Rink's Policies. *See* Compl., ¶¶ 50-52. This Court has subject matter jurisdiction over this claim because there are real, substantial, and justiciable issues and controversies between the parties requiring adjudication.

The Eighth Circuit has recognized that insurance coverage disputes are a proper subject of declaratory relief. *See Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992) (insurance coverage dispute ripe for adjudication where insured made a demand for payment of defense and

indemnity costs and the insurer disputed the demands). *Accord Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC,* 620 F.3d 926, 934 (8th Cir. 2010) (affirming district court's denial of motion to dismiss a coverage action; reasoning that "[i]n the insurance policy coverage context, a declaratory judgment action is ripe irrespective of whether the underlying litigation is ongoing or resolved."); *Emp'rs. Mut. Cas. Co. v. Lockwood*, No. 10-3504, 2011 WL 13234293, at *2 (W.D. Mo. Apr. 18, 2011) (finding insurance coverage dispute ripe for review where insured requested for the insurer to settle claims in response to a demand letter) (citing *Aetna supra*).

As this Court has previously recognized, "the purpose the Declaratory Judgment Act is to enable parties uncertain of their legal rights and obligations to seek a declaration of their rights and obligations thereby promoting the settlement of the controversy in an expedient and economic fashion before duties are breached." *Star Ins. Co. v. Cont'l Res., Inc.*, 89 F. Supp. 3d 1015, 1021 (D. N.D. 2015).  Akin to *Star Insurance*, "[t]he question presented here is not abstract or hypothetical. Several million dollars of insurance coverage are at stake. All of the underlying personal injury claims have been settled, and the question that remains is which party must pay and in what amounts." *Id.* at 1022.

In this case, it cannot be credibly disputed that a substantial controversy exists between parties having adverse legal interests. Continental has demanded

that Rink indemnify Continental for all damages relating to the now-settled

*Lodhotlz* lawsuit, Rink has demanded—on *multiple* times over *several* years—for

Mid-Continent to honor its defense and indemnification obligations under the

Policies and settle the *Lodholtz* lawsuit and Continental's and Rink's claims

relating to Rink and that lawsuit. Mid-Continent has never provided Rink with a

coverage position letter or decision other than an initial October 2015 reservation

of rights letter and has failed—and *explicitly refused*—to timely (or at all) inform

Rink of all facts and circumstances relating to the Lodholtz-related

claims/demands and any and all coverage positions being relied upon by Mid-

Continent relating to the Policies.

     The continued concealment of Mid-Continent's coverage position is

further evidenced by its vague suggestion in its Memorandum (at 6) that "Mid-

Continent *might choose* to deny coverage to Rink in the future[.]" (Emphasis

added). There is no good faith or reasonable basis in this record that warrants

such a "hide the ball" tactic by an insurer when its insured—Rink—has been

threatened with millions of dollars of excess-of-policy-limits exposure.

     Even after this Court issued its partial summary judgment order in the

*Continental/Rink* lawsuit finding that "Rink is obligated to defend, indemnify,

and save harmless Continental from all claims, demands, judgments, and

settlements related to the MSC and arising out of the Lodholtz lawsuit[,]" Mid-

Continent continued to refuse to provide Rink with full disclosure of all facts and communications relating to the Policies and its coverage positions/decision. Mid-Continent's claim (at 6) that Rink "does not yet have any legal obligation to indemnify Continental" cannot be reconciled with this Court's order in the *Continental/Rink* matter and frankly, defies common sense.

Similarly lacking in credibility is Mid-Continent's cursory argument (at 9) that this Court should "conserve its resources" and "abate" resolving the declaratory judgment claim until after "final resolution" of the "first-filed" *Continental-Rink* lawsuit. The "first-filed" rule is a rule of judicial economy and comity that comes into play "when a complaint involving the same parties and issues has already been filed in another district." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). The *Continental/Rink* lawsuit does not involve the same parties as this lawsuit involving Mid-Continent and Rink and involves separate claims for relief. The first-filed rule does not apply here.

There is simply no credible legal or factual basis that warrants further delaying a determination of Rink and Mid-Continent's rights and obligations under the Policies and the Lodholtz-related claims/demands and settlement. Rink has already been harmed by Mid-Continent's inaction and would suffer

12

additional undue harm if there is any further delay. Rink's declaratory judgment claim involves justiciable controversies that should be adjudicated by this Court.

### C. This Court has subject matter jurisdiction over Rink's well-pleaded bad faith claim against Mid-Continent.

With regard to Rink's bad faith claim (Compl., ¶¶ 46-49), Mid-Continent's motion to dismiss is based on its contention (at 6) that Rink's bad faith claim is not ripe because Rink allegedly "cannot assert" a bad faith claim without a "ripe" breach of contract claim. As discussed below in Section I.D, Mid-Continent's argument fails because Rink's breach of contract claim is ripe. It also independently fails because Mid-Continent's ripeness argument is based upon a myopic view of North Dakota bad faith jurisprudence that ignores that the factual allegations in Rink's Complaint more than plausibly plead a jurisdictional predicate for a ripe bad faith tort claim against Mid-Continent.

The North Dakota Supreme Court has recognized that "[i]n an action against an insurer it is possible to have a claim in tort separate and apart from a claim on the insurance contract." *Bender v. Time Ins. Co.*, 286 N.W.2d 489, 492 (N.D. 1979). "The insurer's duty to act in good faith . . . emanates not from the terms of the insurance contract but from an obligation 'imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities.'" *Id.* (quoting *Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Ins. Co.*, 279 N.W.2d 638, 645 (N.D. 1979)). "A breach by an

13

insurer of this duty to act in good faith gives the insured a cause of action in tort for damages proximately caused thereby." *Bender*, 286 N.W.2d at 493.

The tort liability for a breach of the duty of good faith that is imposed by law is not narrowly circumscribed as Mid-Continent contends (at 7), but includes "***a duty to act fairly and in good faith*** in dealing with its insured, ***including*** a duty of fair dealing in paying claims, providing defenses to claims, negotiating settlements, and fulfilling all other contractual obligations." *Hartman v. Estate of Miller*, 656 N.W.2d 676, 680 ¶ 12 (N.D. 2003) (emphasis added). "Whether an insurer acts in bad faith is ordinarily a question of fact." *Id.* Accordingly, in *Bender*, the North Dakota Supreme Court concluded that a trial court had erroneously granted summary judgment in favor of an insurer on a bad faith claim "in the mistaken belief that the action was based totally upon contractual rights without considering the existence of a tort action based upon a breach of the insurer's duty to act in good faith." *Bender,* 286 N.W.2d at 493.

Other jurisdictions recognizing an independent bad faith tort claim akin to North Dakota jurisprudence have made clear that "the implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance." *Rawlings v. Apodaca*, 726 P.2d 565, 573 (Ariz. 1986) (concluding that "although Farmers performed its express covenants, the evidence supports the

14

conclusion that for its own profit Farmers breached its duty to play fairly with its insureds and to give their legitimate interests equal consideration."). *Accord Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 346 (Haw. 1996) ("The breach of the express covenant to pay claims . . . is not the *sine qua non* for an action for breach of the implied covenant of good faith and fair dealing."); *Robinson v. N. Carolina Farm Bureau Ins. Co.*, 356 S.E.2d 392, 395 (N.C. Ct. App. 1987). ("[N]othing in the case law. . . *requires* that the tortious conduct be accompanied by a breach of the contract . . .We do not believe an action for punitive damages from tortious conduct is precluded when the company eventually pays, if bad faith delay and aggravating conduct is present.").

For example, in *Hartman*, an insured alleged that her insurer, American Family, had engaged in bad faith by virtue of conduct including its failure to conduct a reasonable investigation of the claim and to pay benefits in a timely manner. *Hartman*, 656 N.W.2d at 678 ¶ 3. A jury awarded the insured damages that included $20,000 for the bad faith claim. *Id.* at 679 ¶ 6. The insurer argued on appeal that it should have been entitled to judgment as a matter of law on the bad-faith claim because the coverage issue had remained "fairly debatable" until one week before trial. *Id.* at 678 ¶ 13. In affirming the trial court's determination that American Family was not entitled to judgment as a matter of law on the bad faith claim, the North Dakota Supreme Court concluded that American Family's

"failure to resolve the coverage issue and to require its insured to bring an action twenty months after the rollover is evidence of bad faith." *Id*. at 683 ¶ 19.

Similarly in *Ingalls*, the North Dakota Supreme Court recognized that "[a]n insurer's unreasonable defense may evidence bad faith" and found a trial court did not abuse its discretion by allowing testimony at trial that the insurer's pleadings and legal strategies evidenced bad faith. *Ingalls v. Paul Revere Life Ins. Grp.*, 561 N.W.2d 273, 281 ¶ 22 (N.D. 1997). In affirming a jury's $2.5 million award of exemplary damages against the insurer, the *Ingalls* court recognized that the bad faith evidence presented at trial included a "number of unreasonable and unfair actions in bad faith by [the insurer] for the jury to have inferred fraud, malice or oppression from[,]" which included a failure by the insurer to engage in a proper investigation and good faith settlement negotiations and evidence of "postclaim underwriting[.]" *Id.* at 285 ¶ 46.

Here, consistent with North Dakota jurisprudence including *Bender*, *Hartman,* and *Ingalls*, the factual allegations in Rink's Complaint present several plausible, independent breaches of the duty of good faith and fair dealing upon which a fact-finder could ultimately conclude that Mid-Continent has engaged in bad faith as to Rink. *See* Compl., ¶¶ 23-42. Rink has already been damaged by Mid-Continent's bad faith conduct and delay by incurring attorneys' fees in this action, relating to the *Continental/Rink* action, and relating to the Lodholtz-related

claims/demands and settlement. Mid-Continent's stringing along of Rink for almost four years while purporting to "investigate" the claims/demands—while simultaneously refusing to provide Rink with any information regarding its investigation and coverage positions—has fully deprived Rink of the very protection and security which Rink had sought to gain by buying $5 million of insurance to protect its North Dakota operations and to cover the work it was performing for Continental under the MSC.

Rink's bad faith tort claim is ripe for purposes of subject matter jurisdiction and should proceed through discovery. *See Hartman*, 656 N.W.2d at 681 ¶ 12 ("Whether an insurer acts in bad faith is ordinarily a question of fact."). Mid-Continent's motion to dismiss Rink's bad faith claim should be denied in its entirety.

> **D.    This Court has subject matter jurisdiction over Rink's well-pleaded breach of contract claim against Mid-Continent.**

Finally, this Court should reject Mid-Continent's contention (at 4-6) that this Court lacks subject matter jurisdiction over Rink's breach of contract claim (Compl., ¶¶ 43-45) because it is allegedly not "ripe."

Mid-Continent's superficial "ripeness" argument highlights the evasive and dilatory manner in which Mid-Continent has treated its investigation and processing of Rink's indemnification demands and claims. Mid-Continent's failure to timely recognize and accept Continental's and Rink's demands for

indemnity under Rink's Policies breached the Policies. Mid-Continent has been "investigating" these claims/demands since October 2015 and has not made any coverage decision or completed its alleged ongoing investigation. This Court determined months ago that Rink has an obligation to indemnify Continental. Rink has repeatedly demanded that Mid-Continent accept and honor its obligations under the Policies. Mid-Continent has failed to do so. Whether explicit or constructive/implied, Mid-Continent has breached its obligations under the Policies through its conduct and silence and cannot escape adjudication of the propriety of that conduct by claiming (at 6) that *technically* it has not yet, but "***might choose to*** deny coverage to Rink in the future[.]" (Emphasis added). Mid-Continent should not be permitted to elevate form over substance in an attempt to delay adjudication of Rink's claims against it.

A federal court rejected an insurer's similarly evasive prematurity arguments in *Progressive Specialty Ins. Co. v. Smith*, No. 14-320, 2014 WL 7204875, at *5 (S.D. Ala. Dec. 17, 2014). In that case, Progressive argued that there was no subject matter jurisdiction because the insureds "cannot—at this point in time—satisfy the elements of their breach of contract and bad faith claims because there was '*no* actual denial of the claim for benefits[.]'" *Id.* at *5. The *Progressive* court rejected that argument, finding that Progressive's correspondence with the

insured constituted a denial of the claim, "whether that denial is regarded as actual or constructive." *Id.*

Other courts have similarly rejected insurers' attempts to delay adjudication of breach of contract claims based on alleged ongoing investigations. *See, e.g., Weber v. Travelers Home & Marine Ins. Co.*, 801 F. Supp. 2d 819, 832 (D. Minn. 2011) (rejecting Travelers' argument that a breach of contract action should be dismissed as "prematurely filed" because it was still investigating and "had not made a decision"; explaining that "an insurer can constructively deny a claim through its conduct" and that when "an insurer possesses the information necessary to decide an insured's claim but fails to act on that information, the claim is constructively denied."); *Best Place,* 920 P.2d at 353 (recognizing that "a denial of a claim need not be express"; affirming the trial court's conclusion that an "[insurer]'s failure to respond for over four months warranted an inference that [the insured]'s claim was denied.").

Mid-Continent cannot hide behind its own failure during the past almost four years to complete its investigation and issue a coverage denial to now claim that Rink's breach of contract claim is premature until it some point in the future when Mid-Continent "might choose" to deny coverage. If such stringing along of an insured was permissible, no insurer would ever issue a coverage denial—never-ending claim investigations such as Mid-Continent's would just continue

indefinitely for years on end with impunity in order to prevent an insured from filing a breach of contract coverage action.

Mid-Continent has deliberately failed to acknowledge and satisfy its indemnification obligations under the Policies and its failure to do so is a breach of its contractual obligations that is ripe for consideration by this Court and for exploration by Rink through discovery of all relevant written and testimonial evidence. Mid-Continent's motion to dismiss the breach of contract claim should be denied.

## CONCLUSION

Viewed in a light most favorable to Rink, the record before the Court supports denial of Mid-Continent's motion to dismiss under Rules 12(b)(1) and (b)(6). There is a live and substantial controversy here between the parties and Rink has pleaded plausible and compelling claims for declaratory judgment, bad faith, and breach of contract that warrant development through discovery. Any further delay would be wasteful and unduly prejudicial to Rink and prevent the parties from timely resolving the Lodholtz-related lawsuits and insurance claims/demands. Mid-Continent's motion to dismiss should be denied in its entirety.

RESPECTFULLY SUBMITTED on March 14, 2019.

**Anthony Ostlund Baer & Louwagie P.A.**

*/s/  Kristin B. Rowell*

Kristin B. Rowell (ND #07854)
90 South Seventh Street, Suite 3600
Minneapolis, MN  55402
Telephone:  612-349-6969
krowell@anthonyostlund.com

***Attorneys for Rink Construction, Inc.***

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of Rink Construction, Inc.'s Opposition to Motion to Dismiss was filed electronically with the Clerk of Court through ECF on March 14, 2019, and that ECF will send a Notice of Electronic Filing to the following:

John E. Ward — jward@zkslaw.com

*/s/ Kristin B. Rowell*