IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Rink Construction, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| vs. | ) | |
| | ) | |
| | ) | Case No. 1:19-cv-036 |
| Mid-Continent Casualty Co., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's motion to dismiss under Rule 12(b)(1) and 12(b)(6) filed on February 21, 2019. See Doc. No. 2. The Plaintiff filed a response in opposition to the motion on March 14, 2019. See Doc. No. 4. The Defendant filed a reply brief on March 28, 2019. See Doc. No. 7. For the reasons set forth below, the motion to dismiss is denied.

I.  **BACKGROUND**

Plaintiff Rink Construction, Inc. ("Rink") is a North Dakota oilfield construction business incorporated under the laws of North Dakota and located in Keene, North Dakota. Defendant Mid-Continent Casualty Co. ("Mid-Continent") is an Oklahoma-based insurance company, licensed to do business in North Dakota. Mid-Continent sells insurance, adjusts claims, and issues insurance policies to policyholders in North Dakota. Continental Resources, Inc. ("Continental") is an Oklahoma based oil company. Continental is an oil producer in the U.S. and a leaseholder in North Dakota's Bakken Oilfield.[1] Rink filed a claim for declaratory judgment, breach of contract, and bad faith against its insurer, Mid-Continent, for failing to honor its contractual and implied-by-law

---

[1] Continental is not a party in this suit but is a party in two related suits. See Lodholtz v. Cont'l Res., Inc., No. 4:15-CV-116 (D.N.D.); Cont'l Res., Inc. v. Rink Constr., Inc., No. 1:16-CV-091 (D.N.D.).

obligations arising under a commercial general liability coverage policy Rink purchased from Mid-Continent. Mid-Continent removed this action to federal court from the state district court in McKenzie County, North Dakota.

This case arises out of a December 2013 accident at an North Dakota oil and gas wellsite, known as the Bohmbach 4-35H well ("Bohmbach"), which caused severe bodily injuries to Brad Lodholtz ("Lodholtz"), an employee of Rink. Lodholtz was injured while performing services for Continental at Bohmbach. Rink has been performing work for Continental at Continental's wellsites pursuant to a Master Service Contract ("MSC") between the parties since 2008. The MSC contains indemnification obligations from Rink to Continental and requires Rink to procure and maintain insurance in favor of Continental. Rink purchased a primary and umbrella policy from Mid-Continent, which provided $5 million in coverage ("the Policies"). Rink paid approximately $170,000 in premiums for the Policies.

The Policies provide coverage for damages due to bodily injury by accident and extends coverage to additional insureds related to Rink's business, including Continental. The "Additional Insured" endorsement provides that an insured includes: "Any person or organization for whom the named insured has agreed by written 'insurance contract' to designate as an additional insured subject to all provisions and limitations of this policy." See Doc. No. 1-2, ¶17. An additional policy endorsement defines an "insured contract" as including: "that part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." See Doc. No. 1-2, ¶18.

In July 2015, Lodholtz and his wife commenced a lawsuit against Continental regarding the injuries and damages they suffered in connection with the Bohmbach accident. Lodholtz and

his wife alleged their damages arose out of Continental's negligence. Continental tendered the defense and indemnity to Rink and made a claim under Rink's policies with Mid-Continent based on the MSC. Rink then tendered the claim to Mid-Continent and demanded for it to honor its indemnification obligations under the Policies with regard to the Lodholtz lawsuit.

On October 7, 2015, Mid-Continent notified Rink it started an investigation into the circumstances of the claim in order to determine the coverage available to Continental under the Policies. Mid-Continent asserted a reservation of rights while investigating the claim. Continental subsequently sued Rink seeking a declaration as to indemnity under the MSC.

In July 2017, a jury found Continental negligent at the conclusion of the Lodholtz lawsuit. A judgment for $6,159,600 was entered against Continental. On October 24, 2018, this Court granted Continental partial summary judgment against Rink in the Continental lawsuit, concluding "Rink is obligated to defend, indemnify, and save Continental harmless from all claims, demands, judgments, and settlements related to the MSC and arising out of the Lodholtz lawsuit." Cont'l Res. Inc. v. Rink Constr., Inc., 352 F.Supp. 3d 928, 938 (D.N.D. 2018). In November 2018, Continental sent Rink a letter and demanded Rink take action to settle the Lodholtz lawsuit. Also, in November 2018, Rink sent a letter to Mid-Continent regarding its conduct and demanded full disclosure of all facts and communications relating to the Policies, Mid-Continent's communications, coverage positions, settlement discussions, and offers. Mid-Continent did not provide the requested information to Rink. Rink then initiated this lawsuit against Mid-Continent for breach of contract, breach of its duty of good faith and fair dealing, and declaratory relief.

Now before the Court is the Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Jurisdictional issues are a matter for the Court to resolve prior to trial. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction. Osborn, 918 F.2d at 729 n.6. In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. (internal citation omitted). If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the facts are undisputed and neither party has submitted evidence of its own to show otherwise. Therefore, the Court will treat the motion as a facial attack and afford Rink, the non-moving party, all the protections afforded by Rule 12(b)(6). The Court will consider only the complaint and the exhibits attached to the complaint. See Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016) (discussing a facial attack).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim

4

if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Id. at 681. Detailed factual allegations are not necessary under the Rule 8 pleading standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." Ashcroft, 556 U.S. at 678 (2009). The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling plaintiff to relief. Ulrich v. Pop Cnty, 715 F.3d 1054, 1058 (8th Cir. 2013).

### III.   LEGAL DISCUSSION

Mid-Continent states Rink's claims are not ripe for adjudication, Rink is unable to recover damages, and several elements of Rink's declaratory judgment claim are improper. Rink argues Mid-Continent failed to act, protect, and fulfill its duty to act fairly and in good faith. Mid-Continent contends the Court should dismiss for lack of subject matter jurisdiction and for failure

to state a claim upon which relief can be granted. Mid-Continent maintains Rink's breach of contract claim is not ripe, Rink cannot assert bad faith claims without a ripe breach of contract claim, and Rink's claims for declaratory judgment should be dismissed as improper. Rink maintains its claims are well-pleaded and present an actual, substantial controversy between Rink and Mid-Continent, which warrants adjudication.

The crux of Mid-Continent's jurisdictional arguments are that Rink's claims are not ripe for review. Mid-Continent argues Rink's claims do not meet the case or controversy requirement of Article III of the United States Constitution and are not ripe for adjudication.

The ripeness doctrine is rooted in both the "jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration." Pub. Water Supply Dist. No. 8 of Clay Cnty., Missouri v. City of Kearney, Missouri, 401 F.3d 930, 932 (8th Cir. 2005) (internal citation omitted). The "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs v. Gardner, 387 U.S. 136, 148 (1967). In determining whether a case is ripe for judicial review, the Court must evaluate: (1) the fitness of the issues for judicial determination, and (2) the hardship to the parties of withholding court consideration. KCCP Trust v. City of N. Kansas City, 432 F.3d 897, 899 (8th Cir. 2005) (citing Abbott Labs, 387 U.S. at 149). The party seeking relief must satisfy both prongs to at least a minimal degree. Nebraska Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1039 (8th Cir. 2000). A case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities. Id. at 1038.

The hardship prong goes to whether "the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." O'Shea v. Littleton, 414 U.S. 488, 494 (1974) (internal quotations omitted). "The plaintiff's need not wait

until the threatened injury occurs, but the injury must be 'certainly impending.'" Paraquad, Inc. v. St. Louis Hous. Auth., 259 F.3d 956, 958-59 (8th Cir. 2001).

Rink presents well-pleaded issues and claims. Mid-Continent argues Rink's claims are not ripe, and therefore do not warrant adjudication because there has not been a final judgment entered in the Continental lawsuit, nor has proof of loss been filed with Mid-Continent. While a final judgment has not yet been entered in the Continental lawsuit, Rink's injury is not abstract. In an order granting Continental partial summary judgment, this Court held Rink has an obligation to hold Continental harmless because the MSC's indemnification clause is valid and enforceable. Cont'l Res. Inc. v. Rink Constr., Inc., 352 F.Supp. 3d 928, 938 (D.N.D. 2018). The facts surrounding the issue of whether Rink will be obligated to indemnify Continental should not be subject to any further development due to the grant of partial summary judgment. Rink's claims are ripe because the claims present justiciable issues and the threat of injury is real and impending.

### A. **BREACH OF CONTRACT**

Mid-Continent maintains Rink's breach of contract claim is not ripe. Rink argues its claim is ripe because Mid-Continent has failed to satisfy its indemnification obligations under the policies.

"A breach of contract is the nonperformance of a contractual duty when it is due." WFND, LLC v. Fargo Marc, LLC, 730 N.W.2d 841, 848 (N.D. 2007). The elements of a breach of contract are: "(1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." Id. The party asserting the breach is responsible for proving the elements of a breach of contract. Id. Whether a party has breached a contract is a question of fact, although the interpretation of a contract is a question of law. Id. A contract can be expressly or constructively

breached.  An express breach occurs when a party to the contract, either orally in writing, states they will not uphold their end of the contract.  See Breach of Contract, Black's Law Dictionary (8th ed. 2005).  A constructive breach occurs when a party's actions demonstrate their unwillingness to uphold their contractual obligations.  Id.

The Policies contain a provision which states Mid-Continent will pay claims once a final judgment is entered, and proof of loss is provided.  While it is true the Policies contain a provision stating Mid-Continent will pay claims once a final judgment and proof of loss is tendered, the Policies also promise Mid-Continent will pay costs once all the requirements of the policy are met.  See Doc. No. 1-2, pp. 63-64.  It appears Rink has complied with each provision required of it in the policy.  Mid-Continent maintains that until a final judgment and proof of loss is tendered, it is under no obligation to indemnify Rink.

Rink's situation is similar to *Weber v. Travelers Home and Marine Ins. Co.*  In that case, the plaintiff, Weber, filed a claim with the defendant insurance company, Travelers, after a fire at his home.  Weber v. Travelers Home & Marine Ins. Co., 801 F. Supp. 2d 819, 831-32 (D. Minn. 2011).  Travelers denied the claim and Weber subsequently filed suit seeking to recover the policy proceeds.  Id. at 832.  Travelers moved to dismiss the Weber's complaint, alleging the action was premature because it was still investigating the claim when the suit commenced.  Id.  Travelers also argued Weber did not comply with several conditions in the policy.  Id.  The court denied both of Travelers' arguments.  Id.  Travelers asserted since it was in the middle of conducting its claim investigation and had not made a decision with respect to the Weber's claim at the time the suit was commenced, the claim should be denied.  Id. at 832.  Additionally, Travelers asserted because it had not actually denied Weber's claims, he could not show a breach of contract.  Id.  The court disagreed.  Id.  The court stated Travelers was "attempting to hide behind semantics"

8

because Travelers already sent Weber a rejection of his sworn statement in proof of loss, which ultimately constituted a constructive denial of Weber's claim. Id.

Mid-Continent maintains the breach of contract claim should be dismissed because it has not finished its investigation and it might choose to deny Rink coverage in the future. This argument is similar to the argument in *Weber*, which also fails here. Viewed in a light most favorable to Rink, Mid-Continent has demonstrated its unwillingness to provide or deny coverage to Rink; Mid-Continent has not provided Rink with an update on its investigation in almost 4.5 years since it began; and Rink has asked Mid-Continent to uphold its indemnification obligations, provide updates on settlement conferences, and disclose facts and evidence related to settlement. Mid-Continent has not responded to any requests made by Rink. Mid-Continent's actions have arguably demonstrated an unwillingness to perform under the Policies. Mid-Continent's lack of communication and inaction regarding the investigation and determination of coverage arguably constitute a constructive breach of contract and should be subject to discovery. The Court finds that Rink's breach of contract claim is ripe and therefore, warrants adjudication.

### B. BAD FAITH

Mid-Continent contends Rink cannot assert a bad faith claim without a breach of contract claim. Rink argues its bad faith claim is ripe because a bad faith claim can exist outside a breach of contract action.

Under North Dakota law, in "an action against an insurer it is possible to have a claim in tort separate and apart from a claim on the insurance contract." Bender v. Time Ins. Co., 286 N.W.2d 489, 492 (N.D. 1979). An insurer has a duty to act in good faith discharging its contractual duties, imposed by law. Id. "An insurer has a duty to act fairly and in good faith in dealing with

its insured, including a duty of fair dealing in paying claims, providing defenses to claims, negotiating settlements, and fulfilling all other contractual obligations." Hartman v. Estate of Miller, 656 N.W.2d 676, 680 (N.D. 2003). Ordinarily, bad faith conduct on the part of the insurer is a question of fact. Id. "A breach by an insurer of the duty to act in good faith gives the insured a cause of action in tort for damages proximately caused thereby." Bender, 286 N.W.2d at 493. In *Hartman*, the insured argued the insurer acted in bad faith due to the insurer's failure to conduct a reasonable investigation of the claim and to pay benefits in a timely manner. Hartman, 656 N.W.2d at 678. Following a jury trial, the state district court in Burleigh County found the insured 25% at fault and the insurer acted in bad faith handling the claim. Id. The insurer from *Hartman* appealed and argued it should have been entitled to judgment as a matter of law on the bad faith claim because the coverage issues remained "fairly debatable" until one week before trial. Id. The North Dakota Supreme Court disagreed and stated, "failure to resolve the coverage issue and to require its insured to bring an action twenty months after the rollover is evidence of bad faith." Id. at 683 ¶ 19.

In *Ingalls v. Paul Revere Life Insurance Group*, the North Dakota Supreme Court held the bad faith evidence presented at trial included "a number of unreasonable and unfair actions in bad faith" by the insurer for the jury to have inferred bad faith. 561 N.W.2d 273, 285 (N.D. 1997). The bad faith conduct included a failure by the insurer to engage in a proper investigation and good faith settlement negotiations. Id.

Here, Rink's complaint presents several well-plead occasions which support a breach of the duty of good faith and fair dealing. The bad faith claim may be brought separately from a contract action, as a tort. Rink has made repeated demands of Mid-Continent for its position or status in the settlement of the Lodholtz lawsuit, which Mid-Continent has not provided. Mid-

Continent rejected settlement offers in the Lodholtz suit, failed to apprise Rink of the settlement, and refused to fully divulge all the facts and evidence related to Mid-Continent's investigation and the ongoing litigation. Due to Mid-Continent's actions, Rink claims it is incurring attorney's fees in this matter and the Continental suit. Further, in the approximately 4.5 years Mid-Continent has been investigating Rink's claims, Mid-Continent has not provided Rink with any update or decision in its investigation or coverage positions. Bad faith is a question of fact which should be decided by the trier of fact.

### C.     DECLARATORY JUDGMENT

The Eighth Circuit has recognized insurance coverage disputes are a proper subject of declaratory relief. Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp., 968 F.2d 707, 711 (8th Cir. 1992). The Eighth Circuit, in *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, affirmed a district court's denial of a motion to dismiss a coverage action; reasoning that "[i]n the insurance policy coverage context, a declaratory judgment action is ripe irrespective of whether the underlying litigation is ongoing or resolved." 620 F.3d 926, 934 (8th Cir. 2010). In *Star Ins. Co. v. Cont'l Res., Inc.*, this Court noted, "parties uncertain of their legal rights and obligations may seek a declaration of their rights and obligations thereby promoting the settlement of the controversy in an expedient and economic fashion before duties are breached." 89 F.Supp. 3d 1015,1021 (D.N.D. 2015). In *Star Ins.*, the question presented was not abstract or hypothetical. Several millions of dollars were at stake, and the Court stated, "[a]ll of the underlying personal injury claims have been settled, and the question that remains is which party must pay and in what amounts." Id. at 1022.

The purpose of the Declaratory Judgment Act is to help parties determine their rights and obligations before any type of breach occurs.  Rink is uncertain of its legal rights and obligations with Mid-Continent.  While Mid-Continent has not officially taken an adverse coverage position to Rink, Mid-Continent has not communicated with Rink since 2015 regarding their coverage positions, or investigations.  Mid-Continent has allegedly refused to communicate with Rink regarding its defense, and thus Rink is uncertain about its insurance coverage.  There is an outstanding $6,159,600 judgment in the Lodholtz lawsuit.  Like in *Star Ins*., in this dispute, the personal injury claim is settled and the only question which remains is which party is liable to pay the judgment.  Rink's declaratory judgment action is ripe for adjudication.

## IV.    CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law.  Viewed in a light most favorable to Rink at this stage of the case, the record before the Court supports a denial of the Rule 12(b) motion.  For the reasons set forth above, the Defendant's motion to dismiss (Doc. No. 2) is **DENIED**.

**IT IS SO ORDERED**

Dated this 16th day of July, 2020.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court